UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JAMES BURNS,                                                             **Docket No.:**

               *Plaintiff,*

                                            **COMPLAINT**

   -against-

                                            **PLAINTIFF DEMANDS**
PRIMARY PARTNERCARE MANAGEMENT GROUP,     **A TRIAL BY JURY**
INC., MARION DAVIS & HARRY JACOB, M.D.,

               *Defendants.*
------------------------------------------------------------------------X

       Plaintiff James Burns, as and for his Complaint, respectfully alleges, all upon information

and belief, as follows:

**JURISDICTION AND VENUE**

       1.     This Court has original jurisdiction over the subject matter of this litigation

pursuant to 28 U.S.C. §1331, in that certain of the Plaintiff's claims arise under the laws of the

United States, namely Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2 et seq., as

amended ("Title VII"), and supplemental jurisdiction exists over the remainder of Plaintiff's

claims under §296(1)(a) of the New York State Executive Law.

       2.     Venue is proper under 28 U.S.C §1391(b) and (d) because one or all of the

Defendants maintain contacts within this District that would be sufficient to subject it to personal

jurisdiction if this District were a separate State.

       3.     Plaintiff filed a charge of unlawful discrimination with the Equal Employment

Opportunity Commission on April 25, 2022 and received a Notice of Right to Sue against

Defendant PartnerCare Management Group, Inc. on February 15, 2023.

## IDENTITY OF THE PARTIES

3.      At all relevant times mentioned herein, Plaintiff James Burns ("Burns") was employed by Defendants in the County of Nassau, State of New York, from September 20, 2021 to September 24, 2021, when he was fired because Defendants learned that he had previously brought a lawsuit for employment discrimination.

4.      Defendant Primary PartnerCare Management Group, Inc. ("Primary PartnerCare ") is a Delaware corporation that has contacts and does business throughout the New York City metropolitan area.

5.      Primary PartnerCare is a private healthcare company that provides management services for multiple affiliated physician practices and clinics located in Nassau, Suffolk, Queens and New York Counties.

6.      At all relevant times, Defendant Marion Davis ("Davis") was the Chief Executive Officer & Director of Primary Partner Care and was its highest ranking employee.

7.      At all relevant times, Defendant Harry Jacob, M.D. ("Jacob") was the Chief Medical Executive & Director of Primary Partner Care and was its second highest ranking employee, and is the spouse of Davis.

## BACKGROUND RELEVANT TO ALL CAUSES OF ACTION

8.      Burns began his employment with Defendants on or about September 20, 2021, working at its offices in Great Neck, NY, as the Vice President of Human Resources for Primary PartnerCare.

9.      Burns had resigned his prior employment to accept this position and had signed an employment agreement with Primary PartnerCare on September 3, 2021.

10.     At all relevant times, Burns was qualified for his position based on his long track record of working as a senior management human resources professional and the fact that Defendants hired him.

11.     Almost immediately after Burns started at Primary PartnerCare, Davis refused to engage with him and was curt in her tone, which Burns had never before experienced when starting a new job.

12.     On or about Thursday, September 23, 2021, an employee at Primary PartnerCare told Burns in confidence, "I don't think you're going to be around much longer" and that Davis and Jacob had been overheard discussing "a major lawsuit" Burns had brought that "they didn't pick it up at first."

13.     This employee told Burns, "Marion [Davis] is going to make your life miserable to make you quit."

14.     The reality was that Burns had previously commenced a lawsuit against a former employer asserting claims of discrimination and retaliation in the Southern District of New York, which case was still ongoing at the time his employment with Defendants began, but would soon be resolved by a Stipulation of Voluntary Dismissal that was filed with the Court less than two weeks later, on October 6, 2021.

15.     Following that troubling conversation with his colleague, Burns emailed Davis on Thursday, September 23 and asked if they could speak about her perception of Burns' employment, writing:

> If possible, one of the first subjects I would like to discuss with you tomorrow is my role here. Most of our interaction has been through email and I get the sense that you might be unhappy with your hiring of me. The tone of your emails and our limited in-person interactions are leaving me with that impression. Maybe I am reading it wrong,

but this is the first time I have arrived at new job and felt uncomfortable. I hope I am just misreading it, but if not please do not hesitate to be transparent with me if you have reservations about my hiring.

16.     Davis responded by email, "I do have some concerns but I wanted to give it some time before we spoke. Now that you've raised it, we can speak tomorrow."

17.     This was the first time Davis had mentioned any "concerns," and Burns had only been employed for four days.

18.     The next day, Friday, September 24, 2021, at the end of the workday, Burns met with Davis and Jacob.

19.     Before Burns had a chance to say anything, Davis terminated Burns.

20.     There was no discussion of performance issues or resolving any concerns that existed, nor was there any dialogue about how Burns' departure would be characterized or if he wanted to leave on mutual terms, as Burns was simply fired.

21.     Burns responded that, in his career, he had dealt with various personalities and tough situations and that he remained committed to the company, but if he was not wanted, he deserved transparency as to why he was being terminated.

22.     Davis responded, "It's not a fit" and "It's not going to work out."

23.     Burns asked how she came to such a conclusion after only a few days and stated that something else was clearly going on.

24.     Burns pleaded for transparency and looked to Jacobs, who had thus far been silent.

25.     Jacobs then said words to the effect of, **"Listen, nobody is comfortable with this multimillion-dollar lawsuit you have. It's a non-starter and we need to separate ways."**

26.     It was clear that Burns had been fired because of his prior complaint of discrimination, not because Davis determined that Burns was "not a good fit" after just a handful of days.

27.     Burns had left his prior position for this role and was shocked to find himself unemployed just days later, creating an inexplicable gap on his resume and throwing his life into disarray.

28.     As a result of Defendants' retaliatory conduct, Burns has suffered the adverse effects of retaliation, which includes damages to the quality of his life, his self-esteem, self-respect, financial and emotional well-being because he was subjected to the humiliating and demeaning type of conduct described herein, all of which will continue and remain a source of humiliation, distress and financial loss to Burns into the future.

29.     Here, Defendants' conduct towards Burns shows that they acted with willful or wanton negligence, malice, recklessness, or a conscious disregard of Burns' rights, or that their unlawful actions against Burns were so reckless as to amount to a disregard of Burns' rights, so that in addition to all the damages inflicted upon Burns and in addition to all the measure of relief to which he may properly be entitled herein, Defendants should also be required to pay punitive damages as punishment for their discriminatory conduct in order to deter them and others similarly situated from engaging in such conduct in the future.

**AS FOR A FIRST CAUSE OF ACTION ON BEHALF**
**OF BURNS AGAINST PRIMARY PARTNERCARE**
**FOR RETALIATION IN VIOLATION OF TITLE VII**
**OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §2000E-3**

30.     Burns repeats, re-alleges and incorporates in full paragraphs 1 through 29 of this Complaint as though fully set forth at length herein.

31.     Burns' prior participation in a lawsuit asserting claims of discrimination was a protected activity of which Primary PartnerCare was aware.

32.     Burns' prior lawsuit was a proximate cause of his termination, as confirmed by Jacobs stating to Burns, while terminating him, words to the effect of, **"Listen, nobody is comfortable with this multimillion-dollar lawsuit you have. It's a non-starter and we need to separate ways."**

33.     Primary PartnerCare's unlawful conduct had a devastating impact on Burns employment, his emotional well-being, the quality of his life and his life's normal pursuits, which injuries Burns believes will continue to cause him significant damage.

34.     Primary PartnerCare's aforementioned acts constitute unlawful retaliation against Burns in violation of Title VII, 42 U.S.C. §2000e-3(a), which provides, *inter alia*, that:

> It shall be unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made unlawful employment practice by the subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

35.     As a direct and proximate result of Primary PartnerCare's violation of Title VII, Primary PartnerCare is liable to Burns for damages, including punitive damages, as well as reasonable attorney's fees, pre-judgment interest and costs.

36.     Here, the acts of Primary PartnerCare were so egregious and were done with such bad-faith and/or reckless indifference in the face of a perceived risk that its actions would violate Burns' protected rights under the law that, in addition to all the damages inflicted upon Burns and in addition to all the measures of relief to which Burns may properly be entitled herein, Primary PartnerCare should also be required to pay punitive damages in an award to be determined at a

trial of this matter as punishment for its retaliatory conduct, in order to deter Primary PartnerCare and others similarly situated from engaging in such conduct in the future.

37.     As a direct and proximate result of Primary PartnerCare's conduct complained of herein, Burns has suffered damages, injuries and losses, both actual and prospective, which include financial loss, damage to his career and emotional pain and suffering, so that Burns seeks in this First Cause of Action compensatory damages and punitive damages in an amount to be determined at a trial of this matter, as well as reasonable attorney's fees, the costs of this action and pre-judgment interest.

**AS FOR A SECOND CAUSE OF ACTION ON
BEHALF OF BURNS AGAINST ALL DEFENDANTS
FOR RETALIATION IN VIOLATION OF THE NEW YORK
STATE HUMAN RIGHTS LAW, EXECUTIVE LAW §296(7)**

38.     Burns repeats, re-alleges and incorporates in full paragraphs 1 through 37 of this Complaint as though fully set forth at length herein.

39.     Burns' prior participation in a lawsuit asserting claims of discrimination was a protected activity of which Defendants were aware.

40.     Burns' prior lawsuit was a proximate cause of his termination, as confirmed by Jacobs stating to Burns, while terminating him, words to the effect of, **"Listen, nobody is comfortable with this multimillion-dollar lawsuit you have. It's a non-starter and we need to separate ways."**

41.     Defendants' unlawful conduct had a devastating impact on Burns employment, his emotional well-being, the quality of his life and his life's normal pursuits, which injuries Burns believes will continue to cause him significant damage.

42.     The aforementioned acts of Defendants constitute unlawful discriminatory retaliation against Burns in violation of the New York State Human Rights Law, Executive Law §296(7), which provides, inter alia, that:

> It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article.

43.     As a direct and proximate result of Defendants' violation of the New York State Human Rights Law §296(7), Burns was adversely affected in his employment, and did and continues to suffer in his life's normal pursuits, and he believes that the injuries inflicted upon him as a result of Defendants' retaliatory conduct did and will continue to have a devastating effect upon the quality of his life and career, and will prevent him from functioning as he did prior to the conduct complained of herein, all of which Burns alleges to be in the amount of Two Million Dollars ($2,000,000), as well as reasonable attorney's fees pursuant to §297(10), and pre-judgment interest and costs.

44.     Here, Defendants' conduct towards Burns shows that they acted with willful or wanton negligence, malice, recklessness, or a conscious disregard of Burns' rights, or that their unlawful actions against Burns were so reckless as to amount to a disregard of Burns' rights, so that in addition to all the damages inflicted upon Burns and in addition to all the measure of relief to which he may properly be entitled herein, Defendants should also be required to pay punitive damages pursuant to §297(9) as punishment for their reprehensible conduct in the further amount of Three Million Dollars ($3,000,000) in order to deter Defendants and others similarly situated from such conduct in the future.

45.      Burns, therefore, seeks judgment against Defendants on this Second Cause of Action, for, among other things, for compensatory damages in the sum of Two Million Dollars ($2,000,000), and the additional further sum of Three Million Dollars ($3,000,000) in punitive damages, together with costs, pre-judgment interest and reasonable attorney's fees pursuant to §297(10), making a total claim of Five Million Dollars ($5,000,000).

**AS FOR A THIRD CAUSE OF ACTION, IN THE ALTERNATIVE,
ON BEHALF OF BURNS AGAINST DAVIS & JACOB FOR
AIDING AND ABETTING RETALIATION IN VIOLATION
OF §296(6) OF THE NEW YORK STATE HUMAN RIGHTS**

46.      Burns repeats, re-alleges and incorporates in full paragraphs 1 through 45 of this Complaint as though fully set forth at length herein.

47.      Should either Defendant Marion Davis or Defendant Harry Jacob, M.D. (collectively, "the Individual Defendants") be determined to not be individually liable under the New York State Human Rights Law for any reason, then the Individual Defendants should be held personally liable for aiding, abetting and compelling Primary PartnerCare's discrimination against Burns, as more specifically detailed in prior paragraphs of this Complaint, all of which are deemed a part hereof.

48.      As more specifically detailed in prior paragraphs of this Complaint, all of which are deemed a part hereof, the Individual Defendants aided, abetted and compelled Primary PartnerCare's discrimination against Burns, so that, should the Individual Defendants be deemed to have not been Burns' employer, the Individual Defendants should be held personally liable for unlawful aiding and abetting against Burns in violation of §296(6) of the New York State Human Rights Law, which states, *inter alia*:

It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so.

49.     The Individual Defendants aided and abetted Primary PartnerCare to engage in the conduct complained of and, as a direct result, Burns has and will continue to suffer, among other things, a significant loss of income and benefits, emotional injuries, as well as other losses associated with the effects of Defendants' conduct upon Burns' employment, career, and life's normal pursuits.

50.     As a direct and proximate result of the Individual Defendants' conduct complained of herein, Burns has suffered damages, injuries and losses, both actual and prospective, which include financial loss, damage to his career and emotional pain and suffering, so that Burns seeks in this Third Cause of Action compensatory damages in the amount of Two Million Dollars ($2,000,000).

51.     Here, the Individual Defendants' conduct towards Burns shows that they acted with willful or wanton negligence, or recklessness, or a conscious disregard of Burns' rights under the New York State Human Rights Law, or that their unlawful actions against Burns were so reckless as to amount to a disregard of Burns' rights, so that in addition to all the damages inflicted upon Burns and in addition to all the measure of relief to which he may properly be entitled herein, the Individual Defendants should additionally be required to pay punitive damages as punishment for their retaliatory conduct in the further amount of Three Million ($3,000,000) Dollars, in order to deter the Individual Defendants and others similarly situated from engaging in such conduct in the future.

52.     Burns, therefore, in the alternative, seeks compensatory damages on this Third Cause of Action, including, among other things, the emotional harm inflicted upon him in the sum

of Two Million ($2,000,000) Dollars, and an additional and further sum of Three Million ($3,000,000) Dollars for punitive damages, making a total of Five Million ($5,000,000) Dollars in this Cause of Action, plus prejudgment interest, the costs of this action, as well as reasonable attorney's fees.

## JURY DEMAND

Plaintiff hereby demands a jury trial.

**WHEREFORE**, Burns demands judgment against PartnerCare on the First Cause of Action in an award of compensatory and punitive damages to be determined at a trial of this matter; against all Defendants on the Second Cause of Action in the sum of Two Million Dollars ($2,000,000) in compensatory damages and Three Million Dollars ($3,000,000) in punitive damages, for a total of Five Million Dollars ($5,000,000); plus, on each Cause of Action, pre-judgment interest, the costs of this action and reasonable attorney's fees as is permitted under the law; and for such other and further relief as this Court deem just and proper.

**SCHWARTZ PERRY & HELLER LLP**
*Attorneys for Plaintiff*

By:_____
    BRIAN HELLER
    DAVIDA S. PERRY
    3 Park Avenue, Suite 2700
    New York, NY 10016
    (212) 889-6565